<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN FERRUGGIA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 05-5992 (JLL) |
| ) | |
| v. ) | |
| ) | **OPINION** |
| SHARP ELECTRONICS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment filed by Defendant Sharp Electronics Corporation ("Sharp"). Plaintiff John Ferruggia commenced this action alleging that he was discriminated against based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 <u>et</u> <u>seq</u>. This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Sharp's motion for summary judgment is denied.

**I.     BACKGROUND**

Mr. Ferruggia started working for Sharp on October 30, 1989 when he was forty-six years old. (Def.'s Stmt. of Undisputed Facts Pursuant to Local R. 56.1 ¶ 1 [hereinafter "Def.'s Fact Stmt."].) In late 2003 Sharp decided to consolidate its Liquid Crystal Display Products Group ("LPG") with the Mobile and Information Technology Service Division ("MITSD") and the Point

of Sale Division ("POS"), forming "a new consolidated organization, which became known as the Information Systems Group ("ISG")." (Id. at ¶ 14.)   On October 27, 2003, as part of this consolidation process, Sharp "determined that it would conduct a reduction in force [("RIF")] that would include the elimination of seven positions." (Id. at ¶ 19.)   Mr. Ferruggia's position was one of those eliminated; he was terminated as part of the RIF on November 3, 2003. (Id. at ¶ 21.) Sharp asserts that Mr. Ferruggia's position was eliminated because his job functions were "redundant." (Pl.'s Stmt. Pursuant to Local R. 56.1(b) ¶ 22.a. [hereinafter "Pl.'s Fact Stmt."].)   At the time of his termination he was a Senior Budget Control Manager, Grade 18, with a base salary of $93,945. (Def.'s Reply Stmt. of Facts Pursuant to Local R. 56.1 ¶ 22 [hereinafter "Def.'s Reply Facts"].)  The parties do not dispute that while Mr. Ferruggia was employed by Sharp his "work performance was never anything but satisfactory, as demonstrated by salary increases, a promotion, being put on a commission program, commendations by management on his work performance, and his semi-annual receipt of 100% of his management bonus." (Pl.'s Fact Stmt. ¶ 48.)

All employees whose positions were eliminated as part of the RIF, including Mr. Ferruggia, were offered a severance package "on the condition that they execute a general release and waiver of claims waiving and releasing any and all claims that they had or might have had in connection with or arising out of their employment and the termination of that employment." (Def.'s Fact Stmt. ¶¶ 24-25, 30.)  After review by his attorney and some modification to the agreement related to the timing of the severance payment, Mr. Ferruggia "signed the Severance Agreement and General Release on December 16, 2003 and returned it to Sharp." (Id. at ¶ 36.)   In accord with the severance agreement Sharp paid Mr. Ferruggia $98,334.88. (Id. at ¶ 37.)

Despite execution of the Severance Agreement and General Release, Mr. Ferruggia brought the present suit against Sharp alleging age discrimination. Mr. Ferruggia bases his claim primarily on the fact that another younger employee, Deepak Yadav, was retained as part of the RIF and his allegations that, after Mr. Ferruggia's termination, Mr. Yadav assumed most of his responsibilities. Although the parties dispute the actual job functions and responsibilities of Mr. Yadav and Mr. Ferruggia prior to the RIF (see, e.g., Def.'s Reply Facts ¶¶ 46-47), there are several points of agreement. Mr. Ferruggia's specific position was not filled after his termination. (Def.'s Fact Stmt. ¶ 22.) But, as stated by Sharp in its interrogatory answers:

> The following individuals have performed a percentage of [Mr. Ferruggia's] former job functions. These tasks are in addition to their regular job duties.
> (1) Deppak Yadav, Senior Manager of Sales Operation, age 37 (50%)
> (2) Ted Kawamura, Director, age 45 (25%)
> (3) Bruce Pollack, Associate Director-Marketing, age 53 (25%).

(Dec. of William D. Frumkin in Opp'n to Def.'s Mot. for Summ. J. [hereinafter "Frumkin Dec."], Ex. F, Def.'s Ans. To Pl.'s Interrogs., at ¶ 12; see also Def.'s Reply Facts ¶ 22.) In addition, Mr. Kawamura testified, and Sharp admits, that Mr. Kawamura delegated many, if not all, of his assumed duties to Mr. Yadav. (Def.'s Reply Facts ¶ 22.) Thus, after Mr. Ferruggia's termination Mr. Yadav was performing up to 75% of Mr. Ferruggia's reassigned functions. However, Sharp also asserts that while some of Mr. Ferruggia's job functions were reassigned "[a] number of [his] job duties were automated and no longer manually performed after the RIF." (Id. at ¶ 50.f.)

Mr. Yadav was hired as a Senior Business Administrator by Sharp in October 2001. (Def.'s Fact Stmt. ¶ 8.) Although disputed by Mr. Yadav and Sharp (see Def.'s Reply Facts ¶ 49.b.; Reply Cert. of Denise Merna Dadika [hereinafter "Dadika Cert."], Ex. D, Yadav Dep., Tr. 64:2-16), Mr. Ferruggia testified that "[b]ecause of the similarities in their job responsibilities,

and because of Mr. Ferruggia's significant experience in accounting and with Sharp," he was asked to train Mr. Yadav for his position and that they spent a considerable amount of time working together (Pl.'s Fact Stmt. ¶ 49.b.).  Additionally, Mr. Pollack, Associate Director of Marketing, testified as follows:

> Q:  Did you ever witness Mr. Ferruggia and Mr. Yadav working together?
> A:  Yes.
> Q:  Do you know how many occasions approximately you saw Mr. Yadav and Mr. Ferruggia working together?
> A:  It would have been many.

(Frumkin Dec., Ex. L, Pollack Dep., Tr. 26:3-9.)   Shortly before Mr. Ferruggia's termination, Mr. Yadav was a Senior Business Administrator, Grade 15, with a base salary of $53,636.05.  (Def.'s Reply Facts ¶ 22.)  At the same time as Mr. Ferruggia's termination, Mr. Yadav "was promoted to Associate Manager [for the newly consolidated ISG Division], a Grade 16 position, and his base salary was increased from $53,636.05 to $57,000."  (Id. at ¶¶ 22, 50.e.)

## II.     LEGAL STANDARDS

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  On a summary judgment motion, the moving party first must show that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  Id. at 324.   The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation.  See Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III.   DISCUSSION

####   A.   Severance Agreement and General Release

In exchange for a severance payment, Mr. Ferruggia signed a "Severance Agreement and General Release" that purported to waive any right to bring suit against Sharp. Sharp argues that Mr. Ferruggia's execution of the release and acceptance of the severance payment bars his present suit. On the other hand, Mr. Ferruggia argues that the release does not bar the suit because it did not comply with the requirements of the ADEA as set forth in the Older Workers benefit Protection Act ("OWBPA"). This Court agrees with Mr. Ferruggia.

"The [OWBPA] imposes specific requirements for releases covering ADEA claims." Oubre v. Entergy Operations, 522 U.S. 422, 424 (U.S. 1998). These requirements are "prerequisites for knowing and voluntary waivers." Id. at 427. Thus, releases that do not satisfy these requirements will not operate as an effective waiver of an ADEA claim. See id. at 426-28 ("Since [the] release did not comply with the OWBPA's stringent safeguards, it is unenforceable against [the plaintiff] as it purports to waiver or release her ADEA claim."); see also Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 294 n.8 (3d Cir. 2003) (noting that the OWBPA's legislative history states that the statutory minimum requirements "must be satisfied before a court may proceed to determine factually whether the execution of a waiver was 'knowing and voluntary'"). The minimum waiver requirements for terminations that are part of a RIF include

that

> the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to . . .(I) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H).

Mr. Ferruggia asserts that the release he signed does not meet either of these requirements. Sharp does not appear to contest this assertion. Rather they argue that the release was knowing and voluntary as evidenced by the fact that "[p]rior to executing the severance agreement and release, [Mr. Ferruggia] sought and received the advice of his current law firm . . . [; and] that his counsel successfully negotiated more favorable terms in the form of a deferral of the [severance] payment, which had favorable tax consequences sought by [Mr. Ferruggia]." (Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 12.) But, the law is clear that the OWBPA statutory requirements are *prerequisites* to any other consideration of whether a release or waiver is knowing and voluntary. Thus, because the release signed by Mr. Ferruggia did not comply with the OWBPA statutory requirements, it does not bar Mr. Ferruggia's ADEA claim.

      **B.**    **ADEA Claim**

To establish a prima facie ADEA claim, a plaintiff must show that he: "(1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir.

2004). "In the context of a reduction in force, in order to satisfy the fourth element of a prima facie case under the ADEA, a plaintiff must show that the employer retained a sufficiently younger similarly situated employee." Id. For purposes of this motion, Sharp concedes that the first three requirements have been met. Therefore, only the fourth prong is in issue.

Sharp makes two basic arguments related to the fourth prong. First, they argue that there is no "record evidence that his former position was backfilled after the termination of his employment . . . [, only] testimony relating to the assignment of some of his job duties." (Def.'s Reply Facts ¶ 22.) Second, they argue that Mr. Ferruggia and Mr. Yadav were not similarly situated–they had different titles, salaries, and job functions. With respect to the first argument, the law is clear that, in the context of a RIF, Mr. Ferruggia does not need to demonstrate that his prior position was filled. Therefore, the real issue here is whether Mr. Ferruggia has pointed to sufficient evidence to demonstrate that a genuine issue of material fact exists as to whether Mr. Yadav and Mr. Ferruggia were similarly situated.

In Monaco, a case brought under the New Jersey Law Against Discrimination, the Court applied the same standard as under the ADEA to determine whether younger similarly situated employees were retained. 359 F.3d at 304. In that case, the Third Circuit stated that "[i]n order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." Id. at 305. The court further stated that "[t]his determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Id. In that case, the court found summary judgment to be appropriate where

the plaintiff was one of only two senior vice presidents and the other retained vice president was older than plaintiff and no other evidence supported a finding that the plaintiff and other lower level employees were similarly situated.  Id. at 305-06.  On the other hand, in Torre v. Casio, Inc. the Third Circuit found that a plaintiff had met his prima facie burden by presenting evidence that a younger employee assumed his responsibilities.  42 F.3d 825, 831 (3d. Cir. 1994).

      Here, although the salaries and positions of Mr. Ferruggia and Mr. Yadav were clearly different prior to the RIF, the parties hotly dispute the specific job functions of these employees prior to the RIF, with Mr. Ferruggia testifying that there was significant similarity.  In addition, Mr. Ferruggia has testified that he was asked to train Mr. Yadav, Mr. Pollack testified that he saw Mr. Ferruggia and Mr. Yadav working together on many occasions, Mr. Yadav was promoted almost simultaneously with Mr. Ferruggia's termination, and Sharp admits and other testimony supports that Mr. Yadav assumed up to 75% of Mr. Ferruggia's job functions that were reassigned after his termination.  Viewing the evidence in the light most favorable to Mr. Ferruggia, this Court finds that Mr. Ferruggia has demonstrated that a genuine issue of material fact exists as to whether Mr. Yadav and Mr. Ferruggia were similarly situated or whether Mr. Yadav essentially assumed a significant portion of Mr. Ferruggia's job functions after his termination.

      Once a plaintiff has established a prima facie case, to survive summary judgment, he must also "demonstrate[] that there [are] one or more material issues of fact in dispute concerning whether [the employer's] proffered reasons for . . . terminating him were pretextual or whether discrimination actually motivated those decisions." Torre, 42 F.3d at 832. To meet this burden at the summary judgment stage, "a plaintiff need only present evidence from which a reasonable

factfinder could conclude *either* that the defendant's proffered justifications are not worthy of credence *or* that the real reason for the decision was discrimination." Id. (emphasis in original). Additionally, "[b]ecause this 'is clearly a factual question,' summary judgment is in fact rarely appropriate in this type of case." Marzano v. Computer Science Corp., 91 F.3d 497, 509-510 (3d Cir. 1996) (stating that a plaintiff need only "point[] to evidence which calls into question the defendant's intent").

Here, the justification for the RIF was economic. With respect to why Mr. Ferruggia specifically was terminated, Sharp's proffered reason is that his position was redundant. However, by Sharp's own admission, many of Mr. Ferruggia's job functions were reassigned to other employees. Such reassignment could undercut its redundancy argument. Sharp does argue that some portion of the job function was automated and that the other employees were able to absorb the remaining job functions while performing their other work. However, as the Third Circuit noted in Torre, the point at the summary judgment stage is not whether there is evidence which may support Sharp's proffered reason, but whether there is an absence of evidence from which a factfinder could determine that such reason should not be credited. See 42 F.3d at 833. This Court finds that the reassignment of job functions, along with Mr. Ferruggia's testimony regarding his training of Mr. Yadav and Mr. Yadav's simultaneous promotion are sufficient at this stage to demonstrate that a genuine issue of fact exists as to whether Sharp's reasons for terminating Mr. Ferruggia were pretextual.

**IV.   CONCLUSION**

For the foregoing reasons, this Court denies Defendant's motion for summary judgment.

An appropriate Order accompanies this Opinion.


DATED: June 17, 2009                     /s/ Jose L. Linares
                                         JOSE L. LINARES
                                         UNITED STATES DISTRICT JUDGE